FAILING *v.* THE CITY OF SYRACUSE.

(Onondaga County Court — June, 1893.)

Bridge-tenders on the navigable canals of the state are state employees, and as such, the state had the constitutional right to fix their wages, and chapter 380, Laws of 1889, is applicable to them. Under chapter 488, Laws of 1881, any town, village or city on the line of said canals, having such a bridge within its limits, is responsible for the payment of the wages of said tenders, and an action lies for a recovery thereof.

DURING the year 1889, plaintiff and several others were employed on the hoist, lift and swing bridges over the Erie canal in the city of Syracuse, appointed in pursuance of section 2, chapter 488 of the Laws of 1881, which provides that the superintendent of public works shall alone have the power of appointing and removing so many of such bridge-tenders as he may think proper, but the expenses or wages of such bridge-tenders shall be paid to such superintendent of public works by any town, village or city on the line of the navigable canal when and as often as he may require, to be by him paid to said bridge-tenders. The city of Syracuse had been in the habit of paying these bridge-tenders directly, and allowed them during the year 1889, one dollar and eighty cents each per day, the amount at which their compensation had been previously fixed, and their demand for the additional twenty cents per day, to which they claimed they were entitled under chapter 380 of the Laws of 1889, making the *per diem* allowance of state laborers two dollars, having been refused, this action for the recovery of the money thus withheld during the season of navigation was brought in the Onondaga County Court. The case was submitted to the county judge upon the questions of law involved, and the following is his opinion thereon.

*M. Z. Haven,* for plaintiff.

*Charles E. Ide, Corporation Counsel,* for defendant.

NORTHRUP, County J. The plaintiff, representing himself and twelve assignors, sues the city of Syracuse to recover a balance of twenty cents a day, for a given period, claimed to be due for services performed as bridge-tenders on the hoist, lift and swing bridges of the city during the year 1889. The legal questions raised are:

1. Are these bridge-tenders employees of the state? If so, can they sue the city?

2. Are they employees of the city? If so, is the statute of 1889 (chap. 380), fixing the wages of state employees, applicable, or if applicable, is it constitutional?

Section 1, chapter 488, Laws of 1881, provides that any town, village or city on the line of the navigable canals may build and maintain within its own limits a bridge such as may be deemed best, subject, however, first, to the approval and consent, and under the direction of the superintendent of public works, and subject, second, to the requirement that the same must be built at the proper cost and expense of such town, village or city. By the terms of this section the town, village or city may contract for and pay for the building of such bridges, and the laborers in such work would not be " state employees."

Section 2 of the same act, being in relation to bridge-tenders of hoist, lift or swing bridges, declares that the superintendent of public works shall alone have the power of appointment and removal of such and so many of such bridge-tenders as he may think proper, but the expenses or wages of such bridge-tenders shall be paid to such superintendent of public works by any such town, village or city when and as often as he may require, to be by him paid to such bridge-tenders.

By this section, the superintendent of public works appoints and removes the employees. The power to do this carries with it of necessity, or, at least, impliedly, the power to fix the wages. This appointing the employees and fixing their wages would, in the absence of any express provision to the contrary, make them the employees of the state. There is no contrary provision in the statute. Further, these wages are in fact to be paid by the superintendent or by the state, and the state is to be in effect reimbursed by the town, village or city. In other words, the state appoints, and so hires, the bridge-tenders, and the city furnishes the state the money to pay them with.

The state is bound to take care of the canals — their own property — the bridges thereon included, and can only do so by having the power to hire men to do the work. It says to the city : " You may build hoist, swing or lift bridges over our canals on condition that we still have control and super-

vision and power to take proper care of them; but you must pay us what cost we are put to by this additional burden on us." I think the most reasonable view of the case is that the bridge-tenders are state employees and not employees of the city. It was clearly competent for the legislature to fix the amount which should be paid to its own employees.

The further question is raised whether these state employees can sue the city for these wages in case the city fails to advance the money as required by law. The law providing for the building of the bridges tended by these men contained the provision that the city should pay the wages of the bridge-tenders to the superintendent of public works, who in turn was directed to pay the money over to the men. The building of the bridges under this law was an acceptance by the city of these terms, and thereby a contract arose to pay the wages as provided by these terms. There was in law a clear, definite promise on the part of the city, to pay the superintendent of public works the wages of bridge-tenders for their benefit. This constituted the city the debtor of the bridge-tenders, and they are entitled to sue the city on its promise. It was clearly the intent of the city to pay these men through the medium of the superintendent. Not only that, but it appears by the submitted facts that the city actually paid the men directly, so far as they were paid, without the intervention or agency of the superintendent.

If these views are correct, these bridge-tenders were employees of the state; the state had the constitutional right to fix their wages by statute; the statute fixing those wages at two dollars a day is applicable to this case; the city has contracted to pay the wages for the benefit of these men, and the plaintiff, as their assignee, may legally maintain this action for such wages against the city.